UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

AARON R. STANLEY,

                               Petitioner,

            -against-

J L JAMISON, *Warden*,

                             Respondent.

:
:
:
:
:
:
:
:
:
:

**1:22-cv-09769 (ALC)**

<u>**OPINION & ORDER**</u>

---------------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

        Aaron R. Stanley brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2241, challenging his conviction by general court-martial and subsequent confinement. Petitioner

Stanley asks this Court to order the military to provide him with a new trial or release him from

custody. *See* ECF No. 29 at 26. For the following reasons, the petition is **DENIED** in its entirety.

**BACKGROUND**

**I.      Factual History**

        This factual background is largely drawn from the opinions of the U.S. Army Court of

Criminal Appeals ("ACCA") and the U.S. Court of Appeals for the Armed Forces ("CAAF")

affirming Stanley's murder convictions, along with the military court record and parties' briefing.

*See United States v. Stanley*, No. 20050703, 2010 WL 3927478 (A. Ct. Crim. App. Sept. 29, 2010)

("*Stanley I*"), *aff'd in part and vacated in part*, 71 M.J. 60 (C.A.A.F. 2012) ("*Stanley II*").

        In September of 2004, Petitioner Aaron R. Stanley ("Stanley" or "Petitioner") was a

noncommissioned officer stationed at Fort Riley in Kansas. *See Stanley I*, 2010 WL 3927478, at

*1. Stanley, Staff Sergeant Matthew Werner ("Werner"), Sergeant Eric Colvin ("Colvin"), and

Specialist Christopher Hymer ("Hymer") were all involved in a criminal enterprise to grow

marijuana and manufacture methamphetamines at a farmhouse outside Fort Riley that Stanley

1

rented. *See id.* "In the days leading up to September 13, 2004, the day Stanley killed Werner and Hymer at the farmhouse, the four had been using large amounts of methamphetamines with little or no sleep." *Stanley II*, 71 M.J. at 61. On September 13th, suspecting Stanley of sleeping with his wife, Werner made death threats against Stanley and threatened to report their drug operation to the authorities. *See id.* Concerned about these threats, Stanley and Colvin armed themselves and went to the farmhouse to destroy evidence of their enterprise. *See id.*

That night, Werner and Hymer arrived at the farmhouse and started banging on the door. *See Stanley I*, 2010 WL 3927478, at *2. Colvin, believing Werner and Hymer were unarmed, let them into the house. *See id.* Soon thereafter, a fight between Colvin and Werner began in the kitchen. *See id.* This escalated and, at one point, Werner got hold of a knife and cut Colvin's ear off. *See id.* Although Colvin disarmed Werner, when Hymer attacked, Colvin called out to Stanley for help. *See id.* Armed with a rifle and a pistol, Stanley entered the kitchen and held Werner and Hymer at gunpoint. *See Stanley II*, 71 M.J. at 62. "Stanley retained the pistol while he searched the two for weapons (which he did not find). . . . Hymer grabbed a rifle that Stanley had left in the kitchen and fired. . . . Stanley then returned fire with his pistol, killing Hymer." *Id.*

At trial Stanley testified that, shortly after killing Hymer, he saw Werner attempting to stab Colvin in the back, so he shot and killed Werner as well. *See id.* Colvin provided a different account, testifying that Stanley approached Werner, said, "I didn't f[***] your wife, and now you are going to die," and then shot him. *See Stanley I*, 2010 WL 3927478, at *3. Stanley pointed the gun at Colvin next, but it was out of ammunition. *See id.*

## II.    Court-Martial Proceedings

"A court martial is an 'ad hoc tribunal that is called into existence by order of a commander, called a convening authority, for the purpose of considering a set of charges that the commander

has referred to the court.'" ECF No. 23 at 9 (quoting *Ackerman v. Novak*, 483 F.3d 647, 651 (10th Cir. 2007)). "A general court martial consists of a military judge and eight members selected by the military judge to vote on the factual findings (often called the 'panel')." *Id.* (citing 10 U.S.C. §§ 816(b)(1), 851).

Relevant to the instant petition, Petitioner's trial counsel moved the military judge to appoint an expert in forensic psychology, specifically Dr. Maureen Santina, to evaluate Stanley for post-traumatic stress disorder ("PTSD") and assist the defense in preparation for trial. *See* ECF No. 23 at 17; ECF No. 29 at 5–6; ECF No. 38 at 4. The military judge granted the request in part, finding that the defense was entitled to a PTSD expert but had not shown the need for an expert in the broader field of forensic psychology. *See* ECF No. 23-1 at 429. The military judge ordered the appointment of Dr. Santina or an adequate substitute. *See id.* The prosecution offered Lieutenant Colonel Christian DeGregorio, a psychiatrist assigned to the hospital at Fort Riley, as an adequate substitute. *See id.* The defense opposed Dr. DeGregorio's appointment because his educational background and training was inferior to that of Dr. Santina. *See id.* After hearing testimony on this issue, the military judge ultimately found Dr. DeGregorio to be an adequate substitute and appointed him to Stanley's defense. *See id.* at 432.

On June 6, 2005, "a military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of wrongful possession of marijuana with the intent to distribute, wrongful use and distribution of methamphetamines on divers occasions, absence without leave, violating a lawful order of a noncommissioned officer, and adultery." *Stanley I*, 2010 WL 3927478, at *1. On June 11, 2005, "an officer and enlisted panel convicted appellant, contrary to his pleas, of premeditated murder." *Id.* "The panel sentenced him to life without the eligibility of parole" and a dishonorable discharge. *Id.* "The convening authority approved the adjudged sentence." *Id.*

### III.    Petitioner's Appeals

Stanley appealed his conviction to the ACCA, raising fourteen claims of error. *See Stanley I*, 2010 WL 3927478, at *1. Relevant to the instant petition, Stanley argued "he was deprived of his right to a mental health expert because the mental health expert provided by the [prosecution] had inadequate credentials and was conflicted because the [prosecution]'s expert had provided mental health treatment to Colvin." ECF No. 23 at 4. The ACCA determined that none of Stanley's claims entitled him to relief, summarily rejecting all but one, and affirmed the findings and sentence of the military court. *See Stanley I*, 2010 WL 3927478, at *1.

Stanley sought further review before the CAAF on twelve issues, all of which he had previously raised before the ACCA. *See* ECF No. 23 at 7. The CAAF granted review on the military judge's instructions regarding self defense and otherwise declined to review Stanley's claims. *See Stanley II*, 71 M.J. at 61; *see also id.* at 61 n.1 (citing *United States v. Stanley*, 70 M.J. 36 (C.A.A.F. 2011)). The CAAF affirmed the judge's instruction. *See Stanley II*, 71 M.J. at 61.

On October 1, 2012, the Supreme Court denied Stanley's petition for a writ of certiorari. *See Stanley v. United States*, 568 U.S. 824 (2012).

### IV.    Petition for Writ of Habeas Corpus

Stanley initiated this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 15, 2022, while incarcerated at FCI Otisville, a federal prison within the Southern District of New York. *See* ECF No. 1 ("Petition" or "Pet."). Petitioner originally raised four grounds for relief: that (1) his conviction and sentence violated his due process rights because he was prevented from presenting newly discovered exculpatory scientific evidence supporting his actual innocence; (2) the mental health expert testimony fell below the constitutionally required standard; (3) he did not receive effective assistance of counsel; and (4) the CAAF based its findings

4

on an unreasonable application of the law and erroneous factual findings. *See* Pet. at 7–8. Petitioner also filed a motion for expansion of the record, *see* ECF No. 2, and an application for appointment of pro bono counsel. *See* ECF No. 4.

On July 24, 2023, Petitioner filed a memorandum of law in support of his application for pro bono counsel, *see* ECF No. 22, and a motion to substitute Respondent's name. *See* ECF No. 21. The Government filed a memorandum in response to the Petition on August 25, 2023. *See* ECF No. 23. The Government also submitted the record of Petitioner's court-martial proceeding and subsequent appeals, *see* ECF No. 23-1 ("Record"), and the transcript of Petitioner's court-martial. *See* ECF No. 23-2. On September 22, 2023, this Court granted Petitioner's request to expand the record and substitute Respondent's name, and denied his motion for pro bono counsel without prejudice to renewal. *See Stanley v. Pliler*, No. 22-CV-9769 (ALC), 2023 WL 6557811 (S.D.N.Y. Sept. 22, 2023).

On December 14, 2023, Stanley moved for leave to amend the Petition. *See* ECF No. 29; ECF No. 29-1 ("Amended Petition" or "AP"). The Court granted leave and accepted the Amended Petition as Stanley's reply brief. *See* ECF No. 33. Stanley opposed this interpretation of the Amended Petition. *See* ECF No. 35. The Government filed a sur-reply brief on July 16, 2024. *See* ECF No. 28. Petitioner requested leave to respond to the sur-reply, *see* ECF No. 39, and, on August 12, 2024, the Court denied his request. *See* ECF No. 40.

On September 24, 2024, Stanley filed a motion for summary judgment, without leave of the Court to do so. *See* ECF No. 41. The Government filed its opposition to this motion, arguing it is procedurally improper and meritless. *See* ECF No. 45. [1]

---

[1] "A motion for summary judgment is seldom the proper vehicle for adjudicating a petitioner's habeas corpus claims." *Clark v. New York*, 22 Civ. 6635, 2024 WL 4108613, at *15 (S.D.N.Y. Aug. 5, 2024), *report and recommendation adopted*, 2024 WL 4003152 (S.D.N.Y. Aug. 30, 2024). In effort to provide Stanley's *pro se* filings special solicitude, the Court considers the motion for summary judgment as Petitioner's further reply to the

## STANDARD OF REVIEW

### I.    Habeas Review of Military Court Decisions

Under 28 U.S.C. § 2241, a writ of habeas corpus shall be granted when a federal prisoner demonstrates that their detention is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Buchanan v. Warden, FCI Otisville*, No. 13-cv-06356, 2014 WL 3778205, at *2 (S.D.N.Y. July 31, 2014). Federal habeas review of a conviction by a military tribunal is "circumscribed." *Able v. United States*, 155 F.3d 628, 633 (2d Cir. 1998); *see also Brown v. Gray*, 483 F. App'x 502, 504 (10th Cir. 2012) ("The narrow scope of habeas review is even more circumscribed when considering decisions from a court martial."). This is due to the fact that "before a military tribunal, a defendant's constitutional rights are diminished." *Able*, 155 F.3d at 633.

In *Burns v. Wilson*, a plurality of the Supreme Court found the authority of federal civilian courts to review court-martial proceedings was a "limited function . . . to determine whether the military have given *fair consideration*" to the habeas petitioner's claims. 346 U.S. 137, 144 (1953) (emphasis added). "The *Burns* Court, however, did not address the scope of 'fair consideration.'" *Roukis v. United States*, No. 10-cv-2219, 2013 WL 9889920, at *10 (S.D.N.Y. Jan. 23, 2013) ("*Roukis I*"), *report and recommendation adopted as modified sub nom. Roukis v. U.S. Army*, No. 10-CV-2219, 2014 WL 6238416 (S.D.N.Y. Nov. 14, 2014) ("*Roukis II*").

In the nearly seventy-five years since *Burns*, circuit courts have tried to address this omission and developed jurisprudence to clarify when review of a military conviction on habeas corpus is appropriate. *See, e.g.*, *Rucker v. Wormuth*, No. 21-2540-PR, 2022 WL 16707000, at *1

---

Government's opposition to the Amended Petition. *See Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) ("Courts must afford *pro se* plaintiffs 'special solicitude.'" (internal quotation omitted)). Ultimately, consideration of this brief, and the Government's response, did not alter the Court's decision.

(2d Cir. Nov. 4, 2022) (summary order) ("[I]f a 'military decision has dealt fully and fairly with an allegation raised in . . . [a habeas] application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence.'" (quoting *Burns*, 346 U.S. at 142)); *Armann v. McKean*, 549 F.3d 279, 286 (3d Cir. 2008) (*Burns* "requires the federal habeas court to deny relief where the military courts provided full and fair consideration to the claim or claims asserted in the habeas petition."); *Donoho v. Kirk*, No. 23-55600, 2024 WL 2952535, at *1 (9th Cir. June 12, 2024) (summary order) (quoting *Broussard v. Patton*, 466 F.2d 816, 818 (9th Cir. 1972)) (applying similar full and fair consideration standard).

The Tenth Circuit in particular has needed to articulate a standard of civilian court review "because the United States Disciplinary Barracks at Fort Leavenworth, Kansas is located within that court's jurisdiction." *Sharp v. U.S. Army*, No. 4-CV-1070, 2008 WL 163595, at *3 (N.D.N.Y. Jan. 16, 2008). To "determine whether the military courts gave full and fair consideration to [a] petitioner's claims," the Tenth Circuit established a four-factor test. *Brown*, 483 F. App'x at 504 (citing *Dodson v. Zelez*, 917 F.2d 1250 (10th Cir. 1990)). Those factors are:

> (1) whether the asserted error was of substantial constitutional dimension, (2) whether the issue is one of law rather than of disputed fact already determined by the military tribunals, (3) whether military considerations may warrant different treatment of the constitutional claims at issue, and (4) whether the military courts gave adequate consideration to the issues involved and applied proper legal standards.

*Sharp*, 2008 WL 163595, at *3 (citing *Dodson*, 917 F.2d at 1252–53). "[S]atisfaction of each factor is . . . critical to the invocation of our merits review." [2] *Santucci v. Commandant, United States Disciplinary Barracks*, 66 F.4th 844, 858 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 191 (2023); *see id.* at 857 (finding full merits review appropriate where the claim "involved a substantial

---

[2] The Court notes that "the parties do not dispute the application of these standards of review," which the Second Circuit recently found sufficient on its own to apply the full-and-fair-consideration standard of review. *Rucker*, 2022 WL 16707000, at *1; *see also* ECF Nos. 23 at 11–13, 41 at 2.

constitutional issue, was one of law rather than of disputed fact, did not implicate unique military considerations, and, though raised before the military courts of review, was summarily affirmed without discussion" (internal quotations omitted)).

"It is only when the military has not dealt fully and fairly with a claim that 'the scope of review by the federal civil court expands' and the federal civil court may reach the merits." *Roukis II*, 2014 WL 6238416, at * 3 (quoting *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 811 (10th Cir. 1993)). "[F]ull and fair consideration does not require a detailed opinion by the military court." *Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 671 (10th Cir. 2010). "[W]here an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily." *Roberts v. Callahan*, 321 F.3d 994, 997 (10th Cir. 2003). "Similarly, a court's failure to hear oral argument is not fatal to 'full and fair consideration.'" *Roukis II*, 2014 WL 6238416, at * 3 (citing *Thomas*, 625 F.3d 667). Civilian courts must "decline to presume a military appellate court has failed to consider all the issues presented to it before making a decision." *Thomas*, 625 F.3d at 672; *see also Rucker*, 2022 WL 16707000, at *1 (quoting *id.*). "Full and fair consideration" cannot have been given where military courts "refused to consider" the petitioner's claims, *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986), or "where the briefing [wa]s cursory and no indications of full consideration otherwise exist," *Thomas*, 625 F.3d at 672.

"Finally, a petitioner cannot argue that his claims were not given full and fair consideration by the military courts, if he never presents the claims to the military courts." *Roukis II*, 2014 WL 6238416, at * 3 (internal quotation omitted). "If a habeas petitioner neither makes a timely objection to an issue nor raises the issue on appeal, then he has waived that claim." *Id.*; *see also Roberts*, 321 F.3d at 995 ("[I]f a ground for relief was not raised in the military courts, then the

district court must deem that ground waived.") Additionally, a federal court "will not entertain petitions [for habeas relief] by military prisoners unless all available military remedies have been exhausted." *Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975). "To overcome procedural default and 'obtain federal habeas review of claims based on trial errors to which no objection was made at trial, or of claims that were not raised on appeal, a state prisoner must show both cause excusing the procedural default and actual prejudice resulting from the error.'" *Roukis II*, 2014 WL 6238416, at * 3 (quoting *Lips*, 997 F.2d at 812).

## II.    *Pro Se* Pleadings

Courts in this Circuit afford *pro se* litigants "special solicitude" in reviewing their filings. *Quadir v. New York State Dep't of Lab.*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)). "A document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## DISCUSSION

Both Petitioner and the Government agree that the Amended Petition is the operative pleading. *See* ECF No. 38 at 3 n. 4; ECF No. 41 at 1. Accordingly, the Court considers any other claims raised in the initial petition to be abandoned.

In the Amended Petition, Stanley raises two due process claims. *See* AP at 12, 19. First, Stanley argues that Dr. DeGregorio, the mental health expert provided to him at trial, failed to meaningfully examine him for PTSD or assist in preparing or presenting his PTSD-based defense. *See id.* at 12–16. Second, Stanley argues that Dr. DeGregorio, who was assigned to the same post as the court-martial "prosecutors," was insufficiently independent of the prosecution. *See id.* at 19–20. The Court takes each claim in turn.

## I.     Meaningful Examination Claim

Stanley states that the military courts did not give full and fair consideration to his claim based on Dr. DeGregorio's inadequate assistance because (1) only the adequacy of Dr. DeGregorio's appointment by the military judge was raised on appeal, whereas the issue of the meaningfulness of his assistance has not yet been raised, and (2) even if the issue raised on appeal was inclusive of meaningfulness, the issue was argued as a violation of the Sixth Amendment rather than the Due Process Clause of the Fifth Amendment. *See* AP at 12. The Court first analyzes whether this claim was fully and fairly considered by the military courts.

### a. Full and Fair Consideration

The Government argues that the distinctions between Stanley's instant claim and those he raised on appeal "elevate[] form over substance" as the military courts did consider the adequacy of Dr. DeGregorio's appointment and any resulting due process implications. ECF No. 38 at 4. The Court is not convinced of this.

In his appeal to the ACCA, Stanley argued that the military judge failed to provide him with an adequate mental health expert. *See* Record at 435–40. Specifically, Stanley challenged that Dr. DeGregorio's solely clinical credentials rendered him constitutionally deficient as he lacked the training and experience to "determine how [a PTSD] diagnosis fits within the context of

defending criminal charges, a role that requires forensic, not purely clinical, evaluation." *Id.* at 436. Crucially, this challenge targeted the appointment and provision of an expert, not the adequacy of Dr. DeGregorio's actual examination.

Even if this claim is sufficiently distinct from those raised on appeal, the Government argues that Stanley has raised this argument before as his post-trial clemency request stated that "[t]he defense does not believe . . . Stanley was adequately and properly evaluated." Record at 812. Although this letter was attached to the Government's brief to the ACCA, *see id.* at 552, the Court is hesitant to find that such a reference sufficiently raised the claim on appeal, let alone that it demonstrates full and fair consideration by the military court. *See Thomas*, 625 F.3d at 672 (finding merits review permissible "where the briefing [wa]s cursory and no indications of full consideration otherwise exist").

Having determined that this claim was not fully and fairly considered by the military courts because Stanley did not raise it on appeal, the Court decide whether its waiver should be excused.

### b. *Procedural Default*

Stanley both waived and failed to exhaust his due process claim and is thus barred from raising it here unless he establishes a basis to excuse the procedural default. *See Roukis II*, 2014 WL 6238416, at *4 (finding petitioner had procedurally defaulted on several claims by failing to raise them on direct appeal or failing to exhaust them by appealing them to the CAAF); *see also Lips*, 997 F.2d at 812 (finding waiver where claims were not asserted at trial or on appeal). "To overcome procedural default and obtain habeas review, 'the petitioner must demonstrate cause excusing the procedural default and prejudice resulting from the error.'" *Roukis II*, 2014 WL 6238416, at *5 (quoting *Grafmuller v. Wegner*, No. 2:13CV50, 2013 WL 4808881, at *8 (E.D.

Va. Aug. 9, 2013), *report and recommendation adopted*, No. 2:13CV50, 2013 WL 4804288 (E.D. Va. Sept. 5, 2013), *aff'd*, 571 F. App'x 184 (4th Cir. 2014)).

Stanley attempts to establish cause by explaining that he was unaware of the deficient examination and assistance provided by Dr. DeGregorio until 2021. *See* ECF No. 41 at 8. That year Stanley was formally diagnosed with PTSD and "informed by a mental health professional[] that the initial examination be the appointed expert was woefully [i]nadequate and completely contrary to acceptable medical standards." *Id.*

A habeas petitioner may be able to establish cause for default if "the factual or legal basis for a claim was not reasonably available to counsel" previously. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 486; *see Gupta v. United States*, 913 F.3d 81, 85 (2d Cir. 2019) (quoting *Murray*, 477 U.S. at 488).

Clearly Stanley and his counsel recognized the possibility that Dr. DeGregorio's examination was inadequate prior to submitting his request for clemency and appeal to the ACCA. In his appellate brief, Stanley stated that Dr. Santina, whom the defense had originally requested be appointed, "believed that, based on [Stanley]'s personal history, he has undergone an above-average number of life experiences that could trigger PTSD." Record at 428. Additionally, Dr. Santina had testified in support of her appointment that a mental health professional who lacked "training and experience in forensic psychology" would be unable to properly assess a PTSD diagnosis for court purposes. *Id.* at 431. She testified that she had reviewed Dr. DeGregorio's credentials and professional history, and she expressed doubt about "whether he[ would] be able to give [the Court] a thorough, comprehensive evaluation of [Stanley]." *Id.* at 432 (internal

quotation omitted). Not only were Stanley and his counsel aware of this at trial and when filing his appeal, but his post-trial request for clemency explicitly raised that "[t]he defense d[id] not believe . . . Stanley was adequately and properly evaluated" by Dr. DeGregorio. *Id.* at 812.

While Stanley may not have actually received his PTSD diagnosis until 2021, the previous statements demonstrate how improbable it is that "the factual or legal basis for [the instant] claim was not reasonably available to counsel" during the appellate process. *Murray*, 477 U.S. at 488. Given this failure to show cause, Stanley cannot overcome his procedural default.[3] *See Lips*, 997 F.2d at 812 (declining to consider prejudice where petitioner failed to establish cause). Accordingly, Stanley's due process claim regarding the meaningfulness of his mental health examination at trial remains procedurally barred and will not be reviewed on the merits.

## II.     Conflicted Mental Health Expert Claim

In his second claim for habeas relief, Stanley asserts that Dr. DeGregorio was not independent and was therefore constitutionally deficient. *See* AP at 19. Dr. DeGregorio was a member of the U.S. Army, like the prosecutors, and was assigned to the same post as the prosecutors. *See id.* Additionally, they were all supervised by the Post Commander, who also served as the convening authority, reviewing and approving the court-martial's findings. *See id.* Stanley argues that he should have been provided a mental health expert completely independent of the prosecution and "free from any possible influence from Stanley's Convening Authority." *Id.* at 20. The failure to do so, Stanley states, was a violation of his right to an independent expert, as established by *Ake v. Oklahoma*, 470 U.S. 68 (1985). *See* AP at 19 (discussing *Ake*). The

---

[3] There is similarly no indication that any risk of miscarriage of justice, such as "where a constitutional violation has probably resulted in the conviction of one who is actually innocent," has occurred. *Murray*, 477 U.S. at 496; *see also Roukis II*, 2014 WL 6238416, at *5 (recognizing that a risk of miscarriage of justice would excuse default, even absent a showing of cause and actual prejudice).

Government argues that Stanley has waived this claim and, even if that were not the case, that it is meritless. *See* ECF No. 38 at 5, 8.

      *a.   Procedural Default*

Stanley states that the right to an independent mental health expert is a "fundamental right not subject to the waiver rule." AP at 20 (citing *Ake*, 470 U.S. at 86–87). He additionally cites to a Ninth Circuit case for the proposition that where habeas claims are of a constitutional nature, a court must conduct a full review. *See Hatheway v. Sec'y of Army*, 641 F.2d 1376, 1380 (9th Cir. 1981); *see* AP at 20 (discussing *Hathaway*). But this proposition in fact pertains to a federal court's ability to "directly review a determination of the military courts and its authority to order the Army" to change its judgment. *Green v. Sklute*, 69 F.3d 547, n.4 (10th Cir. 1995) (analyzing *Hathaway*).

In order to exercise such power over the Army, a federal court must find the court-martial judgment to be void "because of lack of jurisdiction or some other equally fundamental defect." *Hatheway*, 641 F.2d at 1379. In other words, *Hathaway* simply makes clear the basis for federal habeas and other collateral review, but it does not invalidate the deference civil courts must still provide to court-martial proceedings where constitutional violations are alleged. *See Loan v. Berrong*, 937 F.2d 616 (10th Cir. 1991) ("This court's review of a military conviction is limited to claims of jurisdictional defect or denial of constitutional rights . . . [and of such claims] only those issues not fully and fairly considered by the military courts." (citing *Hathaway*, 641 F.2d at 1380–81) (internal quotation marks and other citations omitted)).

Likewise, principles of waiver and exhaustion apply in these cases. *See id.* ("It is fundamental that military courts must first be given the opportunity to examine the alleged error."). Stanley's invocation of *Ake* does not save his claim from these procedural requirements. *See* AP

at 20. In *Ake*, Justice Marshall, wrote that "[t]he Oklahoma waiver rule does not apply to fundamental trial error," in order to assess the Supreme Court's jurisdiction to hear the case. 470 U.S. at 74. "The State [had] argued . . . that the [state] court's holding [based on waiver] . . . rested on an adequate and independent state ground and ought not be reviewed." *Id.* Justice Marshall clarified that the Supreme Court's jurisdiction was properly exercised because "[b]efore applying the waiver doctrine to a constitutional question, the state court must rule, either explicitly or implicitly, on the merits of the constitutional question." *Id.* at 75. This jurisdictional determination does not bear on, let alone discharge, Stanley's obligation to exhaust military remedies.

As previously stated, to overcome procedural default a habeas "petitioner must demonstrate cause excusing the procedural default and prejudice resulting from the error." *Roukis II*, 2014 WL 6238416, at *5 (internal quotation omitted). Stanley provides no justification for his failure to raise this conflict of interest with the military courts. *See generally* AP. Considering that Stanley did argue Dr. DeGregorio was conflicted for other reasons on appeal, and that Dr. DeGregorio's affiliation with the Army and association with the prosecution and Post Commander were known to Stanley at trial, the Court finds no cause to excuse procedural default.[4] Accordingly, the Court finds Stanley's due process claim regarding the independence of his mental health expert to be procedurally barred and will not review it on the merits.

## CONCLUSION

For all of the above-stated reasons, Stanley's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, is **DENIED** and this action is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," the Court declines to

---

[4] There is similarly nothing in the record to indicate a risk of miscarriage of justice. *See supra* at n.2.

issue a certificate of appealability. 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to terminate any open matters on the docket, mail a copy of this Opinion and Order to Petitioner, and close this case.

**SO ORDERED.**

**Dated: September 29, 2025**
    **New York, New York**

                              **ANDREW L. CARTER, JR.**
                              **United States District Judge**